# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DONNA FREE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 09 C 6313 |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, | ) Magistrate Judge Michael T. Mason |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

Claimant Donna Free ("Free" or "Claimant") brings this motion for summary judgment [17] seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner denied Free's claim for disability insurance benefits under Sections 216 and 223 of the Social Security Act (the "SSA"), 42 U.S.C. §§ 416(I) and 423(d). The Commissioner filed a cross-motion for summary judgment [22], requesting that this Court uphold the decision of the Administrative Law Judge ("ALJ"). This Court has jurisdiction to hear this matter pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, Claimant's motion for summary judgment [17] is granted and the Commissioner's cross-motion for summary judgment [22] is denied.

## I. BACKGROUND

### A. Procedural History

Free filed an application for period of disability and disability insurance benefits on April 24, 2006. (R. 123-27). Claimant alleges that she has been disabled since April

1, 2001 due to spinal problems. (R. 37-38, 146). Free was insured through December 31, 2004. (R. 68). Her application was initially denied on June 28, 2006, and again on September 20, 2007, after a timely request for reconsideration. (R. 78, 83). On October 10, 2006, Free filed her request for a hearing. (R. 84). On November 3, 2008, she testified before Administrative Law Judge Regina M. Kossek (the "ALJ"). (R. 26-62). On February 3, 2009, the ALJ issued a decision denying Free's disability claim. (R. 68-73). On March 19, 2009, Free requested review by the Appeals Council. (R. 10-11). On July 22, 2009, the Appeals Council denied Free's request for review, at which time the ALJ's decision became the final decision of the Commissioner. (R. 6-8); *Zurawski v. Halter*, 245 F.3d. 881, 883 (7th Cir. 2001). Free subsequently filed this action in the District Court.

**B.    Medical Evidence**

On January 11, 2003, Free was admitted to the Emergency Room at St. Mary of Nazareth Hospital. (R. 373-91). The admitting diagnosis was back and head pain but the records also indicate that Free denied back pain, weakness, neck pain and headache. (R. 374, 376). Free stated that her boyfriend pushed her head against a window. (R. 376). Free had full range of motion in her extremities, normal gait, normal back flexion on 90, and "no CVAT" (costovertebral angle tenderness). (*Id.*). The records reveal that Free was intoxicated and attempted to leave the ER by running into the parking lot in her hospital gown. (R. 379, 381). A seclusion order was entered to prevent Free from harming herself and others. (R. 382). Free was released 45 minutes later. (*Id.*).

In October 2005, Free began seeing Dr. Remedios Javier, a general practitioner

2

at the West Town Neighborhood Health Center, on a regular basis. (R. 214-221, 238-39, 246-261). Free complained of severe pain in her lower back and tail bone as well as numbness in all ten of her toes. (R. 214, 238). On October 28, 2005, Dr. Javier ordered Free to undergo an x-ray of her spine. (R. 214). The x-ray showed irregular L5/S1 facet consistent with degenerative joint disease, osteopenia, and no gross compressions. (R. 232).

On November 29, 2005, Dr. Javier referred Free for a CT scan of her lumbar spine at Cook County Hospital. (R. 216). The CT scan indicated that at L4/5, there was a moderately large posterior and right lateral disc bulge, relatively severe facet osteoarthritis and probable moderate narrowing of the canal. (R. 272). The scan also revealed that at L5/S1, there was moderate diffuse posterior and right lateral bulge of the disc and severe facet osteoarthritis. (*Id.*). Claimant continued to see Dr. Javier, who prescribed medication for her pain. (R. 217-220). She complained of worsening pain, back spasms, charley horses and an inability to walk more than a block and a half. (R. 220).

On March 31, 2006, Dr. Javier referred Free to the Neurosurgery Clinic at Cook County Hospital for an MRI. (R. 220-21). The MRI indicated "multilevel degenerative disc disease and facet arthropathy" as well as an "L4/L5 disc bulge associated with posterocentral disc protrusion effacing ventral thecal sac." (R. 271).

Claimant was seen at Cook County's Neurosurgery Clinic on May 1, 2006. She complained of pain in her lower back, numbness in her toes and charley horses in both of her feet. (R. 323). She was prescribed medication and told to follow up after her MRI. (*Id.*). Claimant returned on July 10, 2006. (R. 275). She complained of lower

back pain for the last 2-3 years, worsening over the past several months. (*Id.*). She also complained of pain radiating into her lower extremities, numbness in both feet, and difficulty ambulating up and down stairs. (*Id.*). The records reveal that the MRI showed L4/L5 central disc herniation with mild spinal stenosis. (*Id.*). Dr. Solomon recommended no surgical intervention at that time. (*Id.*). Free was referred to a pain clinic for an epidural steroid injection and told to continue taking Tylenol as needed. (*Id.*).

Claimant saw Dr. Javier again on July 19, 2006. She explained that she had been referred for a steroid injection but wanted to discuss possible surgery for her back problems. (R. 258).

On July 26, 2006, Dr. Javier opined that based on a CT scan and a MRI performed at Stroger Hospital, Free has degenerative discs and osteoarthritis in the lumbar spine L-1 to L-5. (R. 326). He further opined that "due to these conditions, Donna Free has had chronic pain/numbness in both her lower back and legs over the last three years." (*Id.*). Dr. Javier stated that Claimant's pain "limits her ability to walk more than one block or climb stairs without experiencing extreme discomfort" and that "she will require continued treatments in order to manage the pain and may require other treatment options in the future." (*Id.*).

Free saw Dr. Javier again on September 5, 2006. (R. 256-60). She continued to complain of pain and stated she would not go back to Cook County Hospital for steroid shots because she did not think it would help. (*Id.*). Free told Dr. Javier she wanted surgical intervention for her slipped disks before she is paralyzed. (R. 259). She also requested a note to bring to the Social Security office to get a medical card. (*Id.*).

4

On November 14, 2006, Free saw Dr. O'Keefe at Norwegian American Hospital. (R. 329). He prescribed physical therapy for her back pain. (*Id.*). Claimant underwent physical therapy twice a week for several weeks at St. Mary & Elizabeth Medical Center but her condition did not improve. (R. 331-333).

On December 21, 2006, Free saw Dr. Michael R. Treister of St. Mary & Elizabeth Medical Center/Norwegian American Hospital, Inc. (R. 333-34). Claimant complained of left-sided lower back pain which radiates into her lower extremities as well as numbness in her toes and cramping in her feet. (R. 333). Free reported that she was injured three years ago when she was battered by her boyfriend and another woman, sustaining back injuries. (*Id.*). Free claimed that she had been told she needed surgery at Stroger Hospital but that she would have to wait 2-3 years for operating room time. (*Id.*). Dr. Treister noted that Free had "[m]ultilevel disc disease and facet arthropathy" and that she had "[c]lassic subjective complaints of severe lumbar spinal canal stenosis." (*Id.*). Free reported that she could only walk one block and could not continue on because of weakness in the lower extremities. (*Id.*). Dr. Treister stated that Free "has a surgical problem," is "unable to do much of anything and needs surgical intervention." (R. 334). Because Dr. Treister no longer performs surgery, he referred Free to Cook County Hospital or the Spine Clinic at the University of Illinois. (*Id.*).

On February 21, 2007, Dr. George Cybulski performed surgery on Free's back at Cook County Hospital. (R. 341, 372). The preoperative diagnosis on Dr. Cybulski's Operative Report read "L4-L5 herniated disc with bilateral radiculopathy." (R. 341). Dr. Cybulski performed an "L4 laminectomy, bilateral L4-L5 foraminotomy, and bilateral microdiscectomy of L4-L5." (*Id.*). The Operative Report states:

5

> This 55-year-old woman has been seen by me in the clinic and has had a long history of unremitting pack pain with numbness in her feet. She has an MRI scan which demonstrates an L4-L5 herniated disc with spinal stenosis. It is my impression that she is symptomatic from this level and since she has failed conservative management, I have recommended a decompression.

(*Id.*).

Free returned to the Cook County Neurosurgery Clinic on several occasions following her surgery in 2007 and 2008. (R. 336-40, 354-64). She complained of lower pain and back spasms. (*Id.*). No further surgery was recommended. (R. 336).

In September and October 2008, Free was seen at Lake County Neurosurgery by Dr. Erickson. (R. 367, 372). An MRI taken December 7, 2007 showed minor degenerative joint disease at multiple levels. (R. 367). Claimant was told her situation may be one which requires advanced pain management or additional surgery. (R. 367, 372).

Claimant saw Dr. Cybulski again on December 15, 2008. He agreed to perform an L4-5 laminectomy / discectomy, which was to be scheduled for January 2009. (R. 405).

On December 12, 2008, Dr. Javier filled out an Illinois Department on Aging 2007 Schedule A Physician's Statement, in which he stated that Free became disabled from lumbar stenosis and degenerative disease sometime in 2003. (R. 406).

### C.   **Claimant's Testimony**

Free testified before the ALJ on November 3, 2008. (R. 26-62). Free claimed to have suffered severe back and leg pain and spasms since April 1, 2001. (R. 37-38). She said she had trouble walking, and sitting too long or standing was a "burden." (R. 38). Free testified that in 2004, her lower back and tail bone hurt the most. (R. 40).

Free also claimed to have numb toes and leg spasms going down her leg in 2004. (R. 42). She said that the pain was pretty bad - a five or a six out of ten if she was having a back spasm. (R. 41). Free rated the pain at a four or five out of ten if she was not in a spasm. (*Id.*). Free testified that back in 2004, bending caused her pain. (R. 43). Free said she could walk a block and a half, stand for ten minutes, sit for 20-30 minutes, and lift a half gallon of milk comfortably at that time. (R. 42-43). Free also testified that she had difficulty climbing two flights of stairs and carrying groceries. (R. 44).

Free claimed that she had been seeing her general practitioner, Dr. Javier, for thirteen years. (R. 39, 45). Free said that in 2004, she was seeing Dr. Javier and he had prescribed medication or a "pain pill" for her back pain. (R. 38). However, there are no records of visits to Dr. Javier prior to October 2005.

Free also testified that she did not start getting medical treatment until she got her Medicaid card (sometime in 2006). (R. 48). She was only able to see Dr. Javier at the West Town Clinic and other than an x-ray, she was not able to get advanced imaging prior to getting Medicaid. (R. 48-49).

On May 17, 2006, Free completed an Activities of Daily Living Questionnaire. (R. 163-70). She stated that her pain began 2½ to 3 years ago. (R. 164). She complained of pain and difficulty with walking, climbing stairs, cleaning, cooking, doing laundry, carrying groceries and taking out the garbage. (R. 163-69). Free also reported that she had trouble sleeping due to pain and charley horses. (R. 165).

    **D.**    **Medical Expert's Testimony**

Medical Expert Dr. John Cavanaugh (the "ME") testified at the hearing. (R. 52-57). The ALJ specifically limited the ME to consideration of "objective evidence as of

7

December 31, 2004." (R. 51-52). Based on that evidence, the ME testified that he could not evaluate Claimant's condition prior to December 31, 2004. (R. 52). According to Dr. Cavanaugh, conditions such as Claimant's can progress at various speeds depending on the person. (*Id.*). He said that it would be speculative to relate an MRI from 2006 back to Free's condition in 2004. (*Id.*). The ME agreed with the ALJ that if there were medical records from within three to six months of December 2004, such records could relate back to Claimant's condition at that time. (R. 53). However, he also agreed that anything beyond that time period of three to six months would be speculative. (*Id.*). Dr. Cavanaugh noted that there were no objective findings of physical impairment beyond Free's subjective symptoms of pain and numbness in her foot. (R. 54). The ME testified that based on the evidence in the record, he could not reach a conclusion about Claimant's condition as it would be speculative. (R. 57).

### E. Vocational Expert's Testimony

Vocational Expert Dr. Richard Hamerson (the "VE") also testified at the November 3, 2008 hearing. The ALJ asked VE Hamerson to assume he was dealing with an individual that is the same age as Claimant, with the same educational and past work background, that retains the residual functional capacity to perform light work (*i.e.*, standing, walking, or sitting for six hours, unlimited pushing and pulling, with a sit/stand option, occasional postural, and no other limitations). (R. 59). The ALJ asked the VE whether such an individual could perform any of the Claimant's past relevant jobs. (*Id.*). The VE testified that such an individual could perform Claimant's past relevant work as a collection clerk or telemarketer. (*Id.*). The VE further testified that the individual could perform the same jobs even if he or she was limited to sedentary work. (*Id.*). The VE

8

classified the work as a collection clerk as sedentary and semi-skilled and the work as a telemarketer as sedentary and unskilled. (R. 57-58).

The VE also testified that to be capable of full-time employment, an individual must be able to work 35-40 hours a week and stay on task 90% of the time for semi-skilled work, and 85-90% for unskilled work. (R. 59-60). The VE said that if Claimant had to get up every 15 minutes and be off task for 5 minutes, then she could not perform such work, but she could work if she simply stood up every 15 minutes and remained on task. (R. 60-61).

## II.  LEGAL ANALYSIS

### A.  Standard of Review

This Court will affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is more than a scintilla of evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). We must consider the entire administrative record, but will not "re-weigh evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (citing *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). This Court will "conduct a critical review of the evidence" and will not let the Commissioner's decision stand "if it lacks evidentiary support or an adequate discussion of the issues." *Lopez*, 336 F.3d at 539 (quoting *Steele,* 290 F.3d at 940).

In addition, while the ALJ "is not required to address every piece of evidence,"

she "must build an accurate and logical bridge from the evidence to [her] conclusion." *Clifford*, 227 F.3d at 872. The ALJ must "sufficiently articulate her assessment of the evidence to assure us that the ALJ considered the important evidence . . . [and to enable] us to trace the path of the ALJ's reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (per curiam) *(*quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985)).

### B.     Analysis under the Social Security Act

In order to qualify for disability insurance benefits, a claimant must be "disabled" under the Social Security Act (the "Act"). A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). In determining whether a claimant is disabled, the ALJ must consider the following five-step inquiry: "(1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he can perform past relevant work, and (5) whether the claimant is capable of performing any work in the national economy." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The claimant has the burden of establishing a disability at steps one through four. *Zurawski*, 245 F.3d at 885-86. 2001). If the claimant reaches step five, the burden then shifts to the Commissioner to show that "the claimant is capable of performing work in the national economy." *Id.* at 886.

The ALJ followed this five-step analysis. At step one, the ALJ found that Claimant was not engaged in substantial gainful activity and had not been engaged in substantial gainful activity during the period from her alleged onset date of April 1, 2001, through her date last insured of December 31, 2004. (R. 70). At step two, the ALJ found that Claimant had not met her burden to prove that she had a medically determinable impairment by furnishing the necessary evidence in which to reach a conclusion concerning disability. (R. 72). Under sections 216(I) and 223(d) of the Social Security Act, Claimant must establish that she had a disability before her last date insured to be entitled to disability benefits. (R. 68); 42 U.S.C. §§ 216(I), 223(d). The ALJ found that Claimant did not meet the insured status requirement because "there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment through the last date insured." (R. 72). Thus, the ALJ decided this case at step two.

The ALJ did note, however, that even if she gave Claimant the benefit of the doubt, based totally on Claimant's subjective testimony as there were no treatment notes or objective evidence prior to December 2004, Claimant, at best, would be limited to light work. (*Id.*). The ALJ identified light work as "lifting/carrying 20 pounds occasionally and 10 pounds frequently and sitting 6 hours and standing/walking 6 hours in an 8-hour workday." (*Id.*). The ALJ found that Claimant "would be able to perform prior work as a collection clerk (semi-skilled and sedentary work) and telemarketer (unskilled and sedentary work) per the impartial vocational expert." (*Id.*). Thus, the ALJ determined that Claimant would still not be entitled to benefits even if the analysis progressed beyond step two. (*Id.*).

11

Free argues that the ALJ erred because she did not determine whether Free was disabled at the time of the hearing and then determine the onset of her disability in accordance with Social Security Ruling ("SSR") 83-20. Free also argues that the ALJ erred in rejecting all evidence from after her date last insured and in limiting the ME to consideration of objective evidence as of December 31, 2004. Free further contends that the ALJ erred in rejecting the opinion of her treating physician, Dr. Javier. Finally, Free argues that the ALJ failed to make a credibility determination and ignored portions of the VE's testimony.

### C. The ALJ's Opinion Is Not Supported By Substantial Evidence Or Free From Legal Error.

#### 1. The ALJ Erred In Failing To Consider All Of The Relevant Evidence.

Free contends that the ALJ should have either: (1) determined whether she was disabled at the time of the hearing and then followed SSR 83-20 to determine the onset of her disability, or (2) determined whether Free was disabled prior to her date last insured. Even assuming the ALJ chose the second option, according to Claimant, the ALJ erred in failing to consider all of the relevant evidence. We agree.

In *Parker v. Astrue*, 597 F.3d 920, 925 (7th Cir. 2010), the Seventh Circuit held that the ALJ:

> should either have determined whether the plaintiff's ailments are at present totally disabling, and, if so . . . . have retained a medical expert to estimate how grave her condition was in March 2004, the last date before her coverage expired . . . . or the judge should have determined directly whether the plaintiff was totally disabled by then-but in making that determination he must (as under the first approach) consider *all* relevant evidence, including the evidence regarding the plaintiff's condition at present.

(emphasis in original) (citations omitted). Here, the ALJ did not determine that Free was

disabled. Therefore, the ALJ was not obligated to follow SSR 83-20. *Scheck v. Barnhart*, 357 F.3d 697, 701 (7th Cir. 2004) (finding that SSR 83-20 does not apply where the claimant is not found to be disabled).

Instead, the ALJ was required to determine whether Free was disabled as of her date last insured and in making that determination, the ALJ was required to "consider *all* relevant evidence," including evidence regarding Free's current condition. *Parker*, 597 F.3d at 925. The ALJ failed to do so. Indeed, the ALJ specifically stated during the November 3, 2008 hearing that "the evidence post 12/31/04 is not relevant." (R. 28). The ALJ asked Claimant's counsel to direct her to evidence prior to December 31, 2004 (Free's date last insured). (R. 32). Furthermore, it is clear from the ALJ's opinion that she did not consider Free's current condition or the medical evidence after Free's date last insured. ALJ Kossek did not discuss Free's current condition, nor did she discuss the vast majority of medical records from the time period after December 31, 2004. (R. 68-73). "There can be no doubt that medical evidence from a time subsequent to a certain period is relevant to a determination of a claimant's condition during that period." *Halvorsen v. Heckler*, 743 F.2d 1221, 1225 (7th Cir. 1984).

Because there is very little medical evidence before December 31, 2004, we recognize that Free faces an uphill battle in establishing she had a medically determinable physical or mental impairment prior to her date last insured. Nevertheless, the ALJ was still required to consider *all* of the relevant medical evidence, including Free's current condition. Because the ALJ failed to do so, remand is warranted. *Parker*, 597 F.3d at 925.

In addition, the ALJ relied on the ME's testimony that he could not evaluate

13

Claimant's condition because there was no evidence of her condition prior to December 31, 2004. (R. 71). However, the ALJ specifically instructed the ME that he was limited to "the objective evidence as of December 31, 2004." (R. 51-52). It is unclear whether the ME's testimony would have differed had he considered medical records from October 2005, including an x-ray of Free's lumbar spine showing irregular L5/S1 facet consistent with degenerative joint disease.[1] We find that the ALJ's decision to limit the ME to objective evidence prior to Free's date last insured further compounds the ALJ's error in failing to consider all of the relevant evidence. For this additional reason, we find that remand is appropriate.

### 2. The ALJ Erred In Her Evaluation Of Dr. Javier's Opinion.

Next, Free argues that the ALJ erred in rejecting the opinion of her treating physician, Dr. Javier. Claimant began seeing Dr. Javier in October 2005. (R. 214-221, 238-39, 246-261). On July 26, 2006, Dr. Javier opined that Free has degenerative discs and osteoarthritis in the lumbar spine L-1 to L-5. (R. 326). His opinion in this regard was based on a CT scan and a MRI performed at Stroger Hospital. (*Id.*). Dr. Javier further opined that "due to these conditions, [Free] has had chronic pain/numbness in both her lower back and legs over the last three years." (*Id.*). Dr. Javier also stated that Claimant's pain "limits her ability to walk more than one block or climb stairs without experiencing extreme discomfort." (*Id.*).

An ALJ must give a treating physician's opinion controlling weight if two

---

[1] Contrary to Claimant's suggestion, the medical record relating to the October 2005 x-ray was part of the record when the ME rendered his opinion. Although Claimant submitted the x-ray record again after the hearing, it was received into evidence at the hearing. (R. 31, 232).

14

conditions are met: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) it "is not inconsistent with the other substantial evidence" in the case. 20 C.F.R. § 404.1527(d)(2). If a treating physician's opinion is not entitled to controlling weight, it must be weighed using the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion, including medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the treating physician; and (6) any other factors which tend to support or contradict an opinion. 20 C.F.R. § 404.1527(d)(2)-(6). An ALJ may reject a treating physician's opinion if the opinion is unsupported or inconsistent with the evidence in the record. However, if the ALJ rejects the opinion, she must give a good reason. 20 C.F.R. § 404.1527(d)(2); *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir.2010).

Here, the ALJ stated that she gave "very limited weight" to Dr. Javier's opinion because it was not based on objective evidence or contemporaneous treatment notes. (R. 71). The ALJ said that "at best it is based upon claimant's recitation of earlier symptoms." (*Id.*). However, Dr. Javier's opinion does not need to be based on contemporaneous medical evidence. Seventh Circuit precedent requires only that a claimant present contemporaneous evidence establishing that the condition existed during the insured period - not an actual medical diagnosis during the period. *Allord v. Barnhart*, 455 F.3d 818, 822 (7th Cir. 2006) ("Retrospective diagnosis of an impairment, even if uncorroborated by contemporaneous medical records, but corroborated by lay evidence relating back to the claimed period of disability, can support a finding of past

15

impairment." (quotation and citation omitted)); *Wilder v. Apfel*, 153 F.3d 799, 802 (7th Cir. 1998) (requiring contemporaneous corroboration of the condition "but not necessarily contemporaneous medical corroboration" (citations omitted)).

Free testified that she had experienced lower back pain and back spasms since 2001. (R. 37-38). She also testified that in 2004, her activities were significantly limited by her pain and that her pain level ranged from a four to a six out of ten depending on whether she was having a back spasm. (R. 40-43). Free's testimony constitutes contemporaneous evidence that her condition existed during the insured period. Therefore, the ALJ erred in giving Dr. Javier's opinion "very limited weight" solely on the basis that there was no contemporaneous medical evidence.[2] *Allord*, 455 F.3d at 822. Consequently, remand is warranted for further consideration of this treating source opinion.

Free also contends that the ALJ erred in failing to recontact Dr. Javier to ask him the factors on which he based his opinion. According to Free, the ALJ improperly assumed Dr. Javier based his opinion on Claimant's "recitation of earlier symptoms." We disagree. First, Free's reliance on SSR 96-5p is misplaced. SSR 96-5p requires an ALJ to recontact a treating physician if the evidence does not support the treating physician's opinion on any issue reserved to the Commissioner. Here, however, Dr. Javier did not offer an opinion on any issue reserved to the Commissioner. Therefore, SSR 96-5p is inapplicable.

---

[2] If the ALJ did not find Free's testimony concerning her pain and symptoms prior to her date last insured to be credible, the ALJ should have made a credibility determination and explained the basis for that determination in accordance with SSR 96-7p. The ALJ failed to do so.

16

Second, because Dr. Javier did not treat Free until October 2005 and because there are no medical records dating back three years prior to Dr. Javier's opinion, it is clear that his opinion, at least in part, must have been based on Free's recitation of earlier symptoms. An ALJ is not required to recontact a treating physician if the basis of his or her opinion is clear and the case record is adequately developed. *See* SSR 96-2p (additional "development should not be undertaken for the purpose of determining whether a treating source's medical opinion should receive controlling weight if the case record is otherwise adequately developed."). Thus, we find that the ALJ was not required to recontact Dr. Javier. Accordingly, we will not remand on this basis.

### 3. The ALJ Failed To Explain His RFC Assessment And Failed To Make A Credibility Determination.

The ALJ decided this case at step two, finding that through Claimant's date last insured, there were no medical signs or laboratory findings to substantiate the existence of a medically determinable impairment. (R. 70, 72). However, the ALJ did not stop there. Instead, the ALJ went on to find that even if she gave Free the benefit of the doubt based totally on Free's subjective testimony, at best, Claimant would be limited to light work. (R. 72). The ALJ further found that Free could perform her prior work as a collection clerk and a telemarketer. (*Id.*). Thus, the ALJ found that even if she gave Free the benefit of the doubt, Claimant still would not be entitled to benefits.

The ALJ's additional step four and step five findings are not supported by substantial evidence or free from legal error. Indeed, the ALJ's residual functional capacity ("RFC") assessment, in which she found Free capable of performing light work, is utterly devoid of analysis or explanation. The ALJ failed to comply with requirement

17

under SSR 96-8p that "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p. The ALJ also failed to discuss why reported symptom-related functional limitations and restrictions could or could not reasonably be accepted as consistent with the medical and other evidence. *Id.*

Furthermore, the ALJ failed to make a credibility determination. To the extent that the ALJ gave Free the benefit of the doubt based on her subjective testimony and went on to consider steps four and five, the ALJ was required to make a credibility finding. SSR 96-7p ("When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects."). Here, the ALJ failed to make any credibility determination at all. (R. 68-73).

Based on the foregoing, the ALJ's step four and step five findings are not supported by substantial evidence or free from legal error. Accordingly, to the extent that the case progresses beyond step two on remand, the ALJ must reassess Free's RFC and make a proper credibility determination. The ALJ then must reevaluate step

five in light of the new RFC assessment and the credibility determination.[3]

## III. CONCLUSION

For the reasons set forth above, Claimant's motion for summary judgment is granted and the Commissioner's motion for summary judgment is denied. This case is remanded to the Social Security Administration for further proceedings consistent with this Opinion. It is so ordered.

                                                **ENTERED:**

                                                _____

                                                **MICHAEL T. MASON**
                                                **United States Magistrate Judge**

**Dated: June 10, 2011**

---

[3] In light of this finding, we need not address Claimant's argument that the ALJ ignored favorable VE testimony as steps four and five must be reevaluated on remand if the case progresses beyond step two.